IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL NO. |
| | : | |
| Plaintiff, | : | 06-05674 |
| | : | |
| v. | : | |
| | : | |
| JOHN B. TORKELSEN, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Giles, J.                                                                                                December 3, 2007

**I.  Introduction**

Before the court are Defendants Richard D. Propper, M.D. ("Propper") and Daniel P. Beharry, Esq.'s ("Beharry") (collectively "Defendants") Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6), or, in the Alternative, to Transfer pursuant to 28 U.S.C. § 1404, and their Motion for Permission to File Reply Brief.  Also before the court is Defendant John B. Torkelsen's ("Torkelsen") Motion to Join in Defendants' Motions to Dismiss or, in the Alternative, to Transfer.  The ultimate issues raised by the motions and determined by the court are (1) under federal law, whether the court can assert personal jurisdiction over the Defendants in a civil suit under the False Claims Act ("FCA"), 28 U.S.C. § 3729, et seq., when the FCA confers nationwide jurisdiction but Defendants contest jurisdiction in this particular district because of inconvenience; (2) under federal law, whether Plaintiff has alleged fraud with sufficient specificity to withstand a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), and whether the Complaint sets forth a cognizable claim under the FCA; and (3) whether this

action should be transferred to the United States District Court for the District of Connecticut or New Jersey (Newark) for the convenience of the parties, witnesses and in the interests of justice.

Defendants' Motion to File Reply Brief and Torkelsen's Motion to Join in Defendants' Motions to Dismiss or, in the Alternative, to Transfer are granted. For the reasons that follow, however, Defendants' motions to dismiss or, in the alternative, to transfer are denied.

First, the court finds that asserting personal jurisdiction is proper. The FCA confers nationwide personal jurisdiction. Defendants have minimum contacts with the United States as a whole, and jurisdiction would not offend traditional notions of fair play and substantial justice. Second, Plaintiff's Complaint is pled with sufficient specificity to satisfy Fed. R. Civ. P. (9)(b). The Complaint adequately puts the Defendants on notice of the precise misconduct with which they are being charged. It sufficiently alleges a prima facie case under the FCA. When the Complaint is construed in a light most favorable to the Plaintiff, one can reasonably infer that Propper and Beharry caused a false claim to be submitted.

Third, Defendants' motion to transfer is denied because Defendants' specific allegations of inconvenience do not weigh heavily in favor of transfer.

**II. General Background**

The United States of America, by and through the Department of Justice and on behalf of its agency, the United States Small Business Administration ("SBA"), brings this action under the FCA for an alleged fraud perpetrated on the SBA through its Small Business Investment Company ("SBIC") program. Allegedly, Defendants submitted, or caused to be submitted, false claims and or false statements in order to receive federal funds from the SBA. This case involves

false claims submitted in connection with a SBIC known as Acorn Technology Fund, LP ("Acorn").

The Complaint alleges that Defendants Propper and Beharry directed and controlled significant portions of Acorn's investments, made an illegal loan to Acorn, made false representations directly to the SBA, received excessive management fees or other illegal payments from Acorn, and engaged in conflict of interest transactions with Acorn.

### III. Discussion

**A.     Standard of Review**

Although the Plaintiff bears the burden of demonstrating the facts that establish personal jurisdiction, in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), this court must accept all of the Plaintiff's allegations as true and construe disputed facts in favor of the Plaintiff.  Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368-69 (3d Cir. 2002). Additionally, a court should not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  United States ex rel. Schmidt v. Zimmer, Inc., 386 F.3d. 235, 240 (3d Cir. 2004).  In evaluating the propriety of the dismissal, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and determines whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.  Id.

**B.      The Motion to Dismiss is Denied Because Personal Jurisdiction is Proper.**

Defendants argue that this court cannot assert personal jurisdiction over them because they do not have minimum contacts with the Eastern District of Pennsylvania. (Defs. Mot. to Dismiss. 7.)  Where a plaintiff's claim is based on a federal statute that authorizes nationwide service of process, the Third Circuit has held that the relevant forum for analyzing the extent of the defendant's contacts is the United States as a whole.  Pinker, 292 F.3d at 369 (stating that "where Congress has spoken by authorizing nationwide service of process . . . the jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits").

Here, the Plaintiff brings suit under the FCA, which states that "any action . . . may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act . . . occurred."  31 U.S.C. § 3732(a).  The FCA further states that "a summons . . . shall be issued by the appropriate district court and served at any place within or outside of the United States."  Id.  Because the FCA authorizes nationwide service of process, the United States as a whole is the relevant forum for analyzing the extent of the Defendants' contacts.  See Pinker, 292 F.3d at 369.

Generally, jurisdiction may be exercised when the defendant has constitutionally sufficient "minimum contacts" with the forum and where subjecting the defendant to the court's jurisdiction comports with "traditional notions" of fair play and substantial justice.  Id. at 368-69 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

1. **Defendants have Sufficient Contacts with the United States as a Whole.**

In assessing the sufficiency of defendants' contacts with the forum, courts examine the extent to which the defendants availed themselves of the privileges of American law and the extent to which they could reasonably anticipate being involved in litigation in the United States. Pinker, 292 F.3d at 369. All three of the Defendants have sufficient contacts with the United States as a whole because Defendants Propper, Beharry, and Torkelsen reside and conduct business in the United States. They thereby availed themselves of the privileges of American law and must anticipate being involved in litigation in the United States.

Defendant Torkelsen is currently in federal custody as a result of his guilty plea for making false statements in records he submitted to the SBA. Additionally, Torkelsen was the managing director of Acorn Technology Partners, LLC, which was a New Jersey limited partnership. Defendant Beharry is a resident of and is presently admitted to practice law in Connecticut. Defendant Propper is a resident of California and was previously licensed to practice medicine in Massachusetts. Therefore, all three Defendants have sufficient contacts with the United States as a whole.

2. **The Exercise of Personal Jurisdiction Here Does Not Offend Traditional Notions of Fair Play and Substantial Justice.**

Defendants argue, that this court must analyze whether or not asserting personal jurisdiction would comport with traditional notions of fair play and substantial justice. (Defs. Mot. to Dismiss 5.) In contrast, Plaintiff argues that a fairness analysis is not required. (Pl. Resp. to Defs. Mot. to Dismiss 8.) There has been some debate as to whether a fairness analysis ought to apply in the context of a federal statute authorizing nationwide service of process. See

Pinker, 292 F.3d at 370-71 n.2 (citations omitted).  Although the Third Circuit has not issued an authoritative ruling squarely on this issue, it has indicated that a fairness analysis would be appropriate.  Id. at 371 n.2.

Even if this court were to conduct a fairness analysis, the exercise of personal jurisdiction over Defendants would still be proper because the inconvenience of defending this suit in the Eastern District of Pennsylvania does not render jurisdiction unreasonable and the national interest in furthering the policies of the FCA outweighs the burden on the Defendants.  To evaluate whether the Fifth Amendment requirements of fairness have been satisfied, courts balance the burdens imposed on defendants against the federal interests involved in the litigation.  Id. at 370-71.  Courts engage in this balancing only when a defendant challenging jurisdiction has presented a compelling case that would render jurisdiction unreasonable.  Burger King, 471 U.S. at 477; Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992).

Here, Defendants have not presented a compelling case.  Defendants assert that the costs of litigating in a jurisdiction that is a day's travel away are significant.  (Defs. Reply Br. 5.) Further, Defendants assert that each trip to Philadelphia requires the Defendants to incur travel expenses, overnight accommodations, and the payment to their attorney for ten hours of travel time.  (Id.)  Defendants, however, state that they are able and willing to defend this claim in Newark, New Jersey.  (Defs. Mot. to Dismiss 5.)  The inconvenience of litigating in Philadelphia, Pennsylvania versus litigating in Newark, New Jersey does not present a compelling case that would render jurisdiction unreasonable.

Moreover, even if the inconvenience to the Defendants rendered jurisdiction unreasonable, Defendants' argument fails because the national interest in furthering the policies

of the FCA outweigh the Defendants' inconvenience.  The federal interest involved in the litigation here is very strong.  Fraud against the Government could cost taxpayers from ten to one hundred billion dollars annually.  S. REP. NO. 99-345, at 3 (1986).  The growing pervasiveness of fraud necessitated modernization of the FCA, which is the Government's primary litigation tool for combating fraud.  Id. at 2.  Further, the nationwide service of process provision was added because of the recognition of the existence of multi-defendant and multi-district frauds against the Government.  Id. at 32-33.  Prior to the 1986 amendment, which added the nationwide service of process provision to the FCA, a lawsuit had to be commenced in the district where the defendant could be found, which hindered the Government's litigation efforts in cases involving multiple Defendants.  Id.  Multiple suits increased the cost to the Government to pursue these multiple defendant cases, and there was a comparable impact upon the judicial resources required for a complete adjudication.  Id.

Here, the Plaintiff alleges that Defendants, living in different parts of the United States, conspired to obtain payment for false claims.  (Pl. Resp. to Defs. Mot. to Dismiss 11-12.)  This is exactly the kind of scenario Congress envisioned when it enacted the amendments to the FCA.  The federal policies underlying the statute would be advanced by asserting personal jurisdiction over Defendants pursuant to the nationwide jurisdiction conferred by the FCA.  Were Defendants' motion to dismiss granted, it would undermine the purpose of the statute.  Therefore, the national interest in effective litigation against alleged frauds committed against the United States, which may cost taxpayers billions of dollars annually, and in the efficient use of judicial resources outweighs Defendants' inconvenience of litigating in Philadelphia and not Newark.

**C.      Defendants' Motion to Dismiss is Denied Because the Complaint Satisfies the Pleading Requirements of Fed. R. Civ. P. 9(b) and Establishes a Cognizable Claim under the FCA.**

Defendants argue that the Plaintiff has failed to plead the alleged conspiracy with sufficient specificity and that what is pled does not set forth a cognizable claim under the FCA. (Defs. Mot. to Dismiss. 16-17.)  First, this court determines whether the Complaint is pled with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure.  See United States ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 242-43 (3d Cir. 2004).  Then the court determines whether the Complaint, when construed in a light most favorable to Plaintiff, establishes a cognizable claim under the FCA.  See id.

**1.      Plaintiff Has Pled Fraud with Sufficient Particularity.**

Plaintiff has pled the details of the alleged conspiracy with sufficient specificity to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead, with particularity, the circumstances of the alleged fraud, in order to place the defendants on notice of the precise misconduct with which they are charged.  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d. 786, 791 (3d Cir. 1984).  Allegations of "date, place, or time fulfill these functions but nothing in the rule requires them."  Id.  Furthermore, courts must be sensitive to situations in which sophisticated defrauders may successfully conceal the details of their alleged fraud.  Id.  Courts should not focus exclusively on Rule 9(b)'s particularity language because this is "too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." Christidis v. First Pa. Mortgage Trust, 717 F.2d 96, 100 (3d Cir. 1983) (citation omitted).

Here, the Government has pled over thirty pages detailing the alleged conspiracy to defraud the SBA.  Specifically, the Complaint alleges that Propper and Beharry entered into a side agreement with Torkelsen to control a significant portion of Acorn's funds, and that these agreements were hidden from the SBA.  (Pl. Compl. 10.)  Defendants Propper and Beharry arranged for capital contributions to Acorn that allowed Acorn to meet a $10,000,000.00 minimum of regulatory capital ("Propper-Beharry Investments").  (Id. at 11.)  In exchange for these investments, Torkelsen agreed to cede control of the management and investment decisions over a portion of Acorn's funds to Propper and Beharry without SBA approval, this arrangement was in violation of SBA regulations.  (Id.)

Allegedly, the Propper-Beharry investments were conditioned on the direction by Acorn of a like amount of funds to investments in entities chosen by Propper and/or Beharry ("Investment Quid Pro Quo"); a payment of forty percent of the management fees ("Propper Fee Kickback") and a right to payment of fifty percent of the carried interest ("Profit of the SBIC") of the general partner, Acorn Technology Partners, LLC ("Propper Profit Kickback").  (Id.)  Propper, Beharry and Torkelsen agreed that Acorn would have to return the Propper-Beharry investments in the event the illegal investments and kickbacks were not made.  (Id.)  Collectively, this entire agreement was in violation of SBA regulations.  (Id.)

This agreement allegedly rendered false the representations made directly to the SBA in Acorn's limited partnership agreement.  (Id. at 11-12.)  Additionally, Propper and Torkelsen allegedly engaged in an illegal loan to Acorn of $1,000,000.00.  (Id.)  Certifications of compliance with SBA regulations, which are pre-requisites for drawing SBA funds, allegedly were rendered false because of quid pro quo, kickbacks, false statements, and the loan.  (Id. at

9

12.)

These agreements allegedly gave Propper the power to direct the management and policies of Acorn and therefore Propper was an associate of Acorn. (Id.) Lack of these disclosures, and the failure to seek approval, rendered the certifications associated with payment false. (Id. at 12.) Defendant Propper allegedly used his control of Acorn, hidden from the SBA, to cause or support Acorn's investment in four companies[1] in which Propper or Beharry served as an officer or director more than thirty days prior to financing and/or in which Propper had at least a five percent ownership interest. (Id. at 15.) All of these investments were in violation of SBA regulations, because Propper and Beharry's roles in the companies had to be disclosed prior to funding and approved in writing. (Id.)

The Complaint alleges that, by participating in a scheme to violate the SBA rules, Torkelsen, Propper, and Beharry submitted or caused to be submitted false statements and/or false claims to the Government to obtain SBA's approval concerning management fees. (Id. at 16.) Further, Propper and Beharry allegedly also submitted documents to the SBA that concealed the illegal control that Propper possessed with respect to Acorn. (Id.) Lastly, it is alleged that Propper and Beharry knew that Torkelsen and Acorn were applying for SBA funds and certifying compliance with the SBIC program, and by virtue of their participation in the transactions they caused those false claims and statements to be made to the SBA. (Id. at 24.)

Plaintiff has pled the details of the alleged fraud with sufficient particularity so as to put the Defendants on notice of the precise misconduct with which they are charged. From the face

---

[1] The companies were listed in the Complaint as: Medibuy.com, Fresh Roast, Inc., Endo Surgical Devices, Inc., and Infant Advantage/Parentech.

of the Complaint, Plaintiff has met the pleading standard of Rule 9(b). Therefore, Defendants'

motion to dismiss for failure to state a claim is denied.[2]

### 2. Plaintiff States a Cognizable Claim Under the FCA.

The Plaintiff has established a prima facie claim under the FCA. The facts construed in a light most favorable to the Plaintiff show that Defendants Beharry and Propper knowingly assisted in causing the government to pay claims which were grounded in fraud. To establish a prima facie claim under § 3729(a)(1), a plaintiff must show that: "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." United States ex rel. Schmidt v. Zimmer, 386 F.3d 235, 242 (3d Cir. 2004) (citing Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 182 (3d Cir. 2001)). In order to prove a claim under § 3729(a)(2), a plaintiff must also show that the defendant made or used, or caused someone else to make or use, a false record in order to cause the false claim to be actually paid or approved. Id.

These provisions, considered together, show a purpose to reach any person who knowingly assisted in causing the government to pay claims that were grounded in fraud, without regard to whether that person had direct contractual relations with the government. Id. at 243 (quoting United States ex rel. Marcus v. Hess, 317 U.S. 537, 544 (1943)). Further, "a false certification of compliance with applicable law creates liability under the FCA when certification

---

[2] Defendants' reliance on Bell Atlantic Corp v. Twombly, 127 S. Ct. 1955, 1973 (2007), for the proposition that the standards for pleading allegations of conspiracy required to survive a motion to dismiss have been significantly altered, is misplaced. The Supreme Court in Twombly explicitly did not alter or broaden the scope of the Federal Rules of Civil Procedure. Id. at 1973 n.14. Further, the concern in Twombly was that the complaint failed to render any relief plausible. Id.

is a prerequisite to obtaining a government benefit." Id. (alterations and citation omitted). Lastly, the Third Circuit has applied ordinary causation principles of negligence law in determining responsibility under the FCA. Id. at 244; see United States ex rel. Cantekin v. Univ. of Pittsburgh, 192 F.3d 402, 416 (3d Cir. 1999) (applying the Restatement (Second) of Torts § 443 to determine responsibility under the FCA).

Here, Plaintiff alleges that Propper and Beharry created and pursued a complex scheme that they knew would require Torkelsen to submit false certifications to the government. If this conduct and this knowledge were proven at trial, a jury could conclude that Propper and Beharry knowingly caused Torkelsen's false claims to be filed. When the Complaint is read in a light most favorable to Plaintiff, it can reasonably be inferred that Propper and Beharry must have known that Torkelsen could not have accepted the $1,000,000.00 loan, provided kickbacks, shared profits, paid excessive management fees and engaged in the self dealing with Propper and Beharry in the manner alleged in the Complaint, unless Torkelsen falsely certified Acorn to be in compliance with federal law. Therefore, Plaintiff's Complaint states a claim upon which relief can be granted, and the Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) is denied.

**D.     Defendants' Motion to Transfer is Denied Because Transfer to the United States District Court for the District of Connecticut or New Jersey Does Not Better Serve the Interests of Justice.**

Plaintiff's choice of forum, the Eastern District of Pennsylvania, will not be disturbed because other actions collateral to this case have been ongoing in this court for several years and a transfer to the District of Connecticut or New Jersey (Newark) would do nothing more than shift the longer travel commute from the Defendants to the Plaintiff. Section 1404(a) provides:

"for the convenience of parties and witnesses, and in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); see Jumara v. State Farm Ins. Co., 55 F.3d. 873, 879 (3d Cir. 1995). The burden to establish the necessity of a transfer is on the movant. Id.

The Third Circuit has established various public and private interests that should be considered in conjunction with the enumerated factors of § 1404(a). Id. at 879. The public interest factors include practical considerations that could make the trial easy, expeditious, or inexpensive. Id. The private interests include plaintiff's forum preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their physical and financial condition, the convenience of the witnesses[3], and the location of books and records. Id.

Here, Defendants argue that this action should be transferred because the Complaint does not allege a "single operative fact that occurred in Pennsylvania." (Defs. Mot. to Dismiss 29.) Further, they contend that because Beharry resides in and defense counsel is based out of Connecticut, and Plaintiff's counsel is based out of Washington, D.C., this forum would be equally inconvenient to both parties. (Defs. Mot. to Dismiss 31-32.) Defendants also assert that a majority of the non-party witnesses are found in New Jersey and that those witnesses who would testify as to Acorn are in Connecticut. (Defs. Mot. to Dismiss. 33-34.) Defendants argue that the government has an unfair advantage and that "transfer is the only way to neutralize the government's fundamentally unfair ability to impose an unwarranted cost on Defendants." (Id. at 37.)

---

[3] Only to the extent that the witnesses may actually be unavailable for trial in one of the fora. Jumara, 55 F.3d at 879.

Defendants' contentions do not weigh heavily in favor of a transfer. First, all of Acorn's money was funneled through the Eastern District of Pennsylvania, and Acorn moved to New Hope, Pennsylvania at the end of its fiscal life. (Pl. Resp. to Defs. Mot. to Dismiss. 19-20.) Second, the Defendants' contention that this forum is equally inconvenient to both the Defendant and the Plaintiff is incorrect. The Plaintiff is based out of Washington, D.C. and the contention that litigating in New Haven, Connecticut or Newark, New Jersey would be more convenient is flatly rejected.[4] Third, the Plaintiff's witnesses are in Washington, D.C., and therefore this forum is more convenient than Connecticut or New Jersey. (Pl. Resp. to Defs. Mot. to Dismiss. 20.)

Moreover, the public's interest would be better served by permitting this action to proceed in the Eastern District. As the Plaintiff noted, the receivership and other actions collateral to this instant case have been ongoing before this court for years. Additionally, the Plaintiff avers that much of the evidence in their possession is relevant to these ongoing actions, and that splitting the litigation up further would be extremely burdensome and expensive. (Pl. Resp. to Defs. Mot. to Dismiss 20.) Transferring this case to either New Jersey or Connecticut in essence would do nothing more than shift the longer travel commute from the Defendants to the Plaintiff, while conflicting with the public's interest in judicial economy and the purpose of the nationwide jurisdiction conferred by the FCA. Therefore, Defendants' motion to transfer is denied.

### IV. Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss for Lack of Personal

---

[4]This forum provides a geographic middle point between the parties.

Jurisdiction and for Failure to State a Claim are denied.  Further, Defendants' Motion to Transfer to the United States District Court for the District of Connecticut or the District of New Jersey (Newark) is denied.

An appropriate Order follows.